Jerome CORNFELDT, as trustee for the
next of kin of Phyllis Cornfeldt,
deceased, Respondent,

v.

Lyle TONGEN, Appellant.

No. 49688.

Supreme Court of Minnesota.

Aug. 8, 1980.

Richards, Montgomery, Cobb & Bassford,
Charles A. Bassford, and Kevin P. Keenan,
Minneapolis, for appellant.

Robins, Davis & Lyons, John F. Eisberg, St. Paul, Robert M. Wattson, Minneapolis, and Maury S. Landsman, St. Paul, for respondent.

Heard before ROGOSHESKE, PETERSON, and YETKA, JJ., and considered and decided by the court en banc.

## ROGOSHESKE, Justice.

Defendant Dr. Lyle Tongen appeals from an order denying his post-trial motions in this action to recover damages for wrongful death due to medical malpractice. On a previous appeal of this case,[1] we recognized a cause of action for a physician's negligent failure to obtain a patient's informed consent to medical treatment and reversed and remanded for a new trial. This appeal, following the second trial, raises the issue whether the trial court's implied finding that the undisclosed risk materialized in harm as a result of the treatment is manifestly contrary to the evidence. We conclude that it is and that it was error to deny defendant's motion for judgment notwithstanding the verdict. Accordingly, we reverse.

The facts are recited in detail in our prior opinion. Briefly, Phyllis Cornfeldt, plaintiff's decedent, underwent emergency surgery at Miller Hospital in St. Paul for a perforated gastric ulcer in late June 1973. Defendant Dr. Lyle Tongen repaired the lesion and ordered pathologic examination of suspicious tissue surrounding the ulcer which he thought might be cancerous. Analysis indicated cancer, and Dr. Tongen recommended removal of a substantial portion of Mrs. Cornfeldt's stomach. Mrs. Cornfeldt returned for the second surgery about a month after her first operation. She appeared clinically normal but two routine preoperative blood tests suggested liver malfunction. Dr. Tongen determined to proceed with the cancer surgery despite the test results and without mentioning them or the increased risk they represented to Mrs. Cornfeldt. The surgery was performed without incident; however, several days postoperatively Mrs. Cornfeldt developed jaundice. Subsequently, she became incoherent and tremulous. It was determined that she was suffering from hepatitis of unknown etiology. Her condition continued to deteriorate and, despite desperate measures, she died on September 20, 1973, as a result of liver failure.

Plaintiff commenced this action against Dr. Tongen (the surgeon), Dr. Knutson (the anesthesiologist), Dr. Beals (the surgery resident), Miller Hospital, and Ayerst Laboratories (the manufacturer of the anesthetic). Plaintiff alleged that the three doctors were each negligent in proceeding with the operation in light of the abnormal test results, in failing to consult a specialist, and in failing to inform Mrs. Cornfeldt of the increased risk of surgery indicated by the test results. Plaintiff further alleged that, if performing the operation was proper, Dr. Knutson was negligent in the selection of the anesthetic and that Ayerst was negligent in failing to provide an adequate warning of the dangers of its anesthetic. At the close of plaintiff's case at the first trial, the trial judge directed verdicts in favor of Dr. Beals, Miller Hospital, and Ayerst. The jury returned a verdict in favor of Dr. Tongen and Dr. Knutson. Plaintiff appealed to this court. We reversed and remanded for a new trial on the issues of Dr. Tongen's negligence in proceeding with the operation, Dr. Tongen's and Dr. Knutson's failure to secure Mrs. Cornfeldt's informed consent to the operation, and damages. We affirmed the judgment in all other respects.

At retrial, plaintiff voluntarily dismissed the claim against Dr. Knutson. The case against Dr. Tongen was submitted to the jury on theories of negligence and informed consent. The jury found that Dr. Tongen was negligent in proceeding with the operation but that the negligence was not a direct cause of the death of Phyllis Cornfeldt. The jury also found that Dr. Tongen had failed to inform Mrs. Cornfeldt of a significant risk of treatment or of an alternative treatment plan, that the failure to

---

1. *Cornfeldt v. Tongen*, 262 N.W.2d 684 (Minn. 1977).

disclose was not justified by therapeutic privilege, and that a reasonable person in Mrs. Cornfeldt's position would have postponed surgery to await the results of further tests. The jury valued the special damages at $45,960.35 and the general damages at $100,000. The trial court, based upon these findings, ordered judgment for the plaintiff. Defendant made various alternative post-trial motions for judgment in his favor or a new trial, all focusing primarily on the evidence which plaintiff insists supports the trial court's implied finding that defendant's negligence in failing to secure Mrs. Cornfeldt's informed consent was a proximate cause of her death. The trial court denied these motions, and defendant appealed.

■ We first recognized a cause of action for medical malpractice due to negligent nondisclosure of a significant risk of treatment or alternative treatment plan in deciding the prior appeal of this case. To make out such a claim, a plaintiff must establish a duty on the part of the physician to know of a risk or alternate treatment program. He must also show a duty to disclose the risk or alternate treatment plan by evidence establishing that a reasonable person in what the physician knows or should have known to be the patient's position would likely attach significance to that risk or alternative in formulating his decision to consent to treatment.[2] He further must show breach of that duty, causation, and damage. While in the prior case we focused our discussion of causation on the question whether to adopt a subjective or objective standard and ultimately determined that a plaintiff must show that a reasonable person, had he been informed of the risk, would not have consented to the procedure, we also stated, and now emphasize, that an element of liability is that the undisclosed risk materialize in harm as a result of the treatment. The interrogatories submitted to the jury upon retrial required a specific finding as to each element

of the cause of action except that no question was asked or requested concerning whether the undisclosed risk materialized in harm as a result of the treatment. The jury found for the plaintiff on each element asked, and the trial court, by ordering judgment for the plaintiff, implicitly found for the plaintiff on the omitted element. R.Civ.P. 49.01; *Murray v. Walter*, 269 N.W.2d 47 (Minn. 1978).

■ Defendant contends that plaintiff failed to produce evidence legally sufficient to support a finding that Mrs. Cornfeldt's death due to liver failure was caused by some aspect of the second surgery. We have stated that to avoid a directed verdict a plaintiff must introduce expert medical testimony that it was more probable than not that the death resulted from the doctor's negligence. The jury cannot be permitted to speculate as to whether earlier diagnosis or different treatment would have resulted in a cure. *Smith v. Knowles*, 281 N.W.2d 653 (Minn. 1979). Plaintiff introduced expert testimony that performing surgery on patients with underlying liver disease increases the risk of death or serious harm. Plaintiff's expert did not state that it was his opinion that Mrs. Cornfeldt probably died as a result of this increased risk or that it was more probable than not that but for the operation she would have recovered.

■ The record also contains evidence in the form of notes in the hospital charts that Mrs. Cornfeldt's treating physicians considered halothane hepatitis as part of their working diagnosis. Plaintiff now argues that this evidence establishes that more probably than not the anesthetic administered for the surgery aggravated liver malfunction causing death. Our review of the record indicates that the references to halothane hepatitis are replete with terms such as "possibility," "impression," "apparently," "suspicion," and "speculated" —hardly language expressing the degree of certainty

---

2. To the extent that our prior opinion suggests that a physician's duty to disclose extends only to significant risks, *i. e.*, death or serious harm, it is hereby modified. Further consideration of

the standard of disclosure has led us to the conclusion that the above-stated objective standard accommodates professional competence and patient self-determination.

required. Plaintiff nowhere elicited the expert opinion that it was more probable than not that the administration of halothane superimposed on hepatitis aggravated the hepatitis to the point of massive liver necrosis causing death.[3] In the absence of such evidence, a finding that the nondisclosure caused the death is unsupported,[4] and it was error to deny defendant's motion for judgment notwithstanding the verdict.

Reversed.

OTIS, J., took no part in the consideration or decision of this case.

AMDAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

3. We do not decide whether the plaintiff established a duty on the part of the surgeon to know or to disclose the risks of anesthesia or specifically of halothane. *See Spannaus v. Otolaryngology Clinic,* 308 Minn. 334, 242 N.W.2d 594 (1976).

4. Plaintiff directs our attention to *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978), where the plaintiff's expert evidence that decedent had a 75% chance of recovery from a heart attack if defendant had used proper treatment and that this substantial chance of recovery was terminated by defendant's failure to provide prompt treatment was held to be prima facie proof of causation. In the present case, plaintiff introduced expert testimony that viral hepatitis has a 95% recovery rate but offered no opinion that Dr. Tongen's conduct terminated this chance of recovery. At best, the evidence indicated that the stress of surgery increased the risk of liver failure in some undisclosed percentage of cases. Plaintiff offered no evidence as to the recovery rate of patients suffering from halothane hepatitis. We have not heretofore adopted the rule in *Hamil* and, in view of the evidentiary differences between *Hamil* and the present case, we need not accept or reject the rule here.