**Georgena LEUBNER, et al., Appellant,**

v.

**Barbara J. STERNER, M.D., et al., Respondents.**

No. C5–91–2239.

Court of Appeals of Minnesota.

April 14, 1992.

Review Granted June 10, 1992.

John W. Carey, Judy Emmings, Sieben, Gross, Von Holtum, McCoy, & Carey, Ltd., Fairfax, for appellant.

Kay N. Hunt, Phillip A. Cole, Lommen, Nelson, Cole & Stageberg, Minneapolis, for respondents.

Considered and decided by HARTEN, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

HARTEN, Judge.

Appellants Georgena and Richard Leubner sued respondent Ronald C. Jensen, M.D., for medical malpractice. After considering the Leubners' offer of proof of expert medical testimony, the trial court entered summary judgment, finding as a matter of law that the offered testimony stated neither a probable death nor a probability of causation. The Leubners appeal, arguing that liability can be imposed under the loss of chance theory for a decreased likelihood of survival. They also contend that aggravation of pre-existing disease and loss of consortium remain at issue. We affirm in part, reverse in part, and remand.

## FACTS

While vacationing in May 1987, Mrs. Leubner experienced a burning sensation in her left breast. She detected two lumps. Dr. Barbara Sterner examined Mrs. Leubner on June 18, 1987 and confirmed the existence of nodules. A contemporaneous mammogram was negative. Dr. Sterner referred Mrs. Leubner to Dr. Jensen for an additional exam and biopsy.

On June 25, 1987, Dr. Jensen examined Mrs. Leubner, but did not order a biopsy. He scheduled a follow-up exam for December. On December 19, 1987, Dr. Jensen reexamined Mrs. Leubner, discovered the lumps were enlarged, and advised her to undergo a biopsy.

Mrs. Leubner was in the process of transferring her health insurance coverage to another plan in which Dr. Jensen was not a treating physician. On January 1, 1988, Mrs. Leubner's new insurance took effect. A biopsy was performed in February 1988. Mrs. Leubner was diagnosed as having breast cancer and underwent a partial mastectomy of her left breast.

The Leubners commenced this malpractice action against Drs. Sterner and Jensen in June 1989. They subsequently dismissed Dr. Sterner from the suit. On November 30, 1989, the Leubners mailed an affidavit of expert testimony to Dr. Jensen pursuant to Minn.Stat. § 145.682 subd. 3(b) (1988). The affidavit contained the opinion of the Leubners' expert, Dr. Alan Newman, that Dr. Jensen's delay resulted in Mrs. Leubner having:

> twice the risk for having positive nodes and for distant metastases [than] she would have had if the diagnosis and treatment had been carried out in June of 1987.

In November 1989, an additional lump was discovered in Mrs. Leubner's left breast, and a mastectomy was performed. Chest wall lesions were excised in November 1990 and April 1991.

At a pre-trial hearing in August 1991, the parties agreed to present the Leubners' theory of causation to the trial court as a question of law. The parties stipulated to Dr. Newman's qualifications for purposes of the hearing. On the record, the Leubners stated Dr. Newman's opinion that:

> [I]t's more likely than not, given the growth behavior of the tumor, that the tumor was indeed less than 2.0 centimeters in diameter, possibly even less than 1.5 centimeters in diameter, at presentation in June of 1987. At that time, I also believe it is more likely than not that lymph node involvement had not yet taken place since the likelihood of positive nodes with tumors of that size is less than fifty percent, whereas, when the tumor was 3.8 centimeters in diameter in 1988, the likelihood of having positive nodes was greater than fifty percent. Also, her chance of having distant metastasis has probably doubled in that time period.

The Leubners further asserted Dr. Newman's opinion that:

> [B]ecause of the rate of growth of the tumor, * * * the patient went from a seventy to eighty percent chance of being free of disease in five years, for example, to approximately a forty percent chance.

The Leubners offered Dr. Newman's opinion that Mrs. Leubner's five year survival rate had decreased from "approximately ninety-six percent to approximately eighty percent." Additionally, they submitted the following written offer of proof:

> Dr. Newman will opine that if [Mrs. Leubner] had been diagnosed and surgically treated in July 1987, rather than February 1988, she would possess an increased chance of survival from her disease of breast cancer, in contrast to [a] present chance of survival with diagnosis and treatment in February of 1988. Her decreased chances of survival [were] directly caused by the delay in diagnosis and treatment.

Dr. Jensen moved for summary judgment.

The trial court granted summary judgment.[1] It ruled that Minnesota does not allow recovery for loss of chance and that causation cannot be submitted to a jury:

> when the necessary medical expert opinion evidence does not state that it is more likely than not * * * that the consequences opined about will occur.

### ISSUES

1. Did the trial court err in granting summary judgment on the loss of chance claim?

---

**1.** Consideration of the "loss of chance" claim dominated the summary judgment proceedings. Little attention was given to the aggravation of pre-existing disease claims; however, the trial court's memorandum indicated that summary judgment was appropriate for the entire case.

2. Did the trial court err in granting summary judgment on the aggravation of pre-existing disease claim?

3. Did the trial court err in granting summary judgment on the loss of consortium claim?

## ANALYSIS

In a summary judgment appeal, this court ascertains whether there are genuine issues of material fact and whether the trial court applied the law correctly. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). A summary judgment decision embraces the pleadings and affidavits on file. Minn.R.Civ.P. 56.03. The evidence is viewed in the light most favorable to the nonmoving party. *Vacura v. Harr's Equip., Inc.*, 364 N.W.2d 387, 391 (Minn.1985).

■ The elements of a prima facie case of medical malpractice are: (1) the applicable standard of care recognized by the medical community, (2) the defendant deviated from the standard, (3) the deviation directly caused injury, and (4) damages. *Reinhardt v. Colton*, 337 N.W.2d 88, 94 (Minn.1983).

■ A plaintiff must introduce expert testimony to establish the first three elements if such issues are not within the common knowledge of laymen. *Id.* at 95. Despite heightened public awareness, diagnosis and treatment of breast cancer are not within a layman's common knowledge.

■ 1. The Leubners argue that Dr. Jensen is liable on their loss of chance claim for lessening Mrs. Leubner's chance of survival from 96% to 80%.

Loss of chance involves the premise that a doctor, by doing something wrong, has decreased the patient's chance of survival (or even caused the death of a patient).

*Kalsbeck v. Westview Clinic, P.A.*, 375 N.W.2d 861, 870 (Minn.App.1985), *pet. for rev. denied* (Minn. Dec. 30, 1985) (citing *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978) (doctor's failure to promptly treat heart attack, terminating 75% chance of survival, was proximate cause of death)); *see also Herskovits v. Group Health*

*Coop.*, 99 Wash.2d 609, 664 P.2d 474 (1983) (doctor's failure to timely diagnose lung cancer, resulting in decrease in survival likelihood from 39% to 25%, was sufficient evidence of causation to create jury issue on proximate cause of death).

Minnesota has neither expressly adopted nor rejected the loss of chance doctrine. *Kalsbeck*, 375 N.W.2d at 870 (citing *Cornfeldt v. Tongen*, 295 N.W.2d 638, 641 n. 4 (Minn.1980)). Application of the doctrine only arises when negligence has already been established. *Kalsbeck*, 375 N.W.2d at 870.

> Once a jury has found negligence on the part of a doctor, loss of chance is one of different theories a court can use to instruct a jury on the other needed threshold, i.e., proximate cause.

*Id.*

The loss of chance doctrine is misplaced in the present case. Negligence has not been established. Taking the Leubners' offer of proof in the most favorable view, at worst Mrs. Leubner's chances of 5 year survival declined from 96% to 80%. An imminent death with attendant injuries is certainly not present. *See, e.g., Roers v. Engebretson*, 479 N.W.2d 422, 423 (Minn. App.1992) (damages awarded for loss of consortium related to imminent death of spouse).

The Leubners have not offered an opinion that Dr. Jensen's negligence "terminated [Mrs. Leubner's] chance of recovery." *Cornfeldt*, 295 N.W.2d at 641 n. 4. Nor have they introduced medical testimony that death will more probably than not result from Dr. Jensen's alleged negligence. *See id.* at 640 (failure to disclose pre-operative indication of liver malfunction was not proximate cause of death). Rather, in Dr. Newman's statistical opinion, death is overwhelmingly improbable. The trial court properly granted summary judgment on the Leubners' loss of chance claim.

■ 2. The Leubners argue that Dr. Jensen's malpractice exacerbated Mrs. Leubner's pre-existing disease. Minnesota has long recognized a cause of action for

negligent aggravation of pre-existing disease. *Schore v. Mueller*, 290 Minn. 186, 189, 186 N.W.2d 699, 701 (1971); *Bloomquist v. Minneapolis Furniture Co.*, 112 Minn. 143, 148, 127 N.W. 481, 482 (1910). The medical community is cognizant that:

> Delay in treatment [of cancer] almost invariably results in a more serious prognosis. *Clinical Oncology for Medical Students and Physicians* at 41 (P. Rubin 3d ed. 1970–1971).

*Evers v. Dollinger*, 95 N.J. 399, 471 A.2d 405, 410 n. 4 (1984).

The Leubners seek damages for Mrs. Leubner's injuries, offering Dr. Newman's opinion that Dr. Jensen's negligence resulted in a decline from 70–80% to a 40% chance of being free of disease 5 years after the initial 1987 examination. Consistent with that opinion, Dr. Newman's earlier affidavit stated that Dr. Jensen's negligence caused "twice the risk for having positive nodes and for distant metastases."

The Leubners have also presented prima facie evidence of resultant injuries occurring during a four year period after Dr. Jensen's initial examination—a partial mastectomy, a mastectomy, and two chest wall lesion surgeries. Under *Reinhardt*, the Leubners have stated a prima facie case of medical malpractice resulting in aggravation of pre-existing disease. The trial court erred in granting summary judgment on the aggravation claim.

3. Mr. Leubner alleges damages for loss of consortium. Given Dr. Newman's affidavit and the oral offer of proof at the hearing, and for the same reasons applicable to the aggravation claim, Mr. Leubner has presented a prima facie case of loss of consortium. The trial court erred in granting summary judgment as to that claim.

## DECISION

The trial court erred in granting blanket summary judgment on the entire action, rather than partial summary judgment on the loss of chance claim.

Affirmed in part, reversed in part, and remanded.