Delores FABIO, Appellant,

v.

James BELLOMO, M.D., Respondent.

No. C6–91–2542.

Court of Appeals of Minnesota.

July 28, 1992.

Review Granted Sept. 30, 1992.

Peter J. Krieser, Susan F.K. Bieniek, Krieser & Bieniek, Minneapolis, for appellant.

Kay Nord Hunt, Philip A. Cole, Steven Theesfeld, Lommen, Nelson, Cole & Stageberg, Minneapolis, for respondent.

## OPINION

HUSPENI, Judge.

In challenging summary judgment for respondent, appellant argues that her negligence action should not be barred because she maintained a continuous course of treatment with respondent until 1986, and that respondent's conduct was a substantial factor in the advancement of appellant's breast cancer. We affirm.

## FACTS

Appellant Delores Fabio was a patient of respondent James Bellomo, M.D., from 1977 until June 27, 1986. Appellant noticed a lump in her left breast and consulted respondent about it sometime between 1982 and 1984. During that examination, respondent detected a mass but dismissed it as a "fibrous mass" and told appellant she need not worry about it.

In March 1986, appellant consulted respondent about a cervical polyp. During that exam, respondent felt the mass in appellant's breast again, but again told ap-

pellant it was a fibrous mass that she need not worry about. Although appellant had contact with other doctors (one foot doctor, one surgeon) the topic of the mass in her breast never arose and she never mentioned it.

In June 1987, appellant consulted Dr. Chilgren because she was experiencing rectal bleeding. During the exam, the doctor detected the mass in appellant's breast and scheduled her for an immediate mammogram. The mammogram showed two tumors. Appellant underwent a biopsy that revealed the two tumors were cancerous; one was three centimeters in diameter. Within a week, appellant had a modified radical mastectomy to remove her left breast and the four lymph nodes into which the cancer had metastasized. Appellant then underwent chemotherapy for nine months.

Appellant brought this medical malpractice action in March 1988 against respondent for his failure in 1986 to properly diagnose and treat appellant's breast cancer. On the day of trial, appellant moved to amend her complaint to include an action for negligence arising out of the examination that had occurred between 1982 and 1984. Respondent moved to dismiss the action alleging negligence in 1986 on the basis that appellant failed to prove causation and failed to prove any damage for which she could recover. Respondent raised a statute of limitations defense to any claims appellant raised from examination between 1982 and 1984. The parties agreed, for the purposes of the summary judgment motion, that the record would contain the pleadings, deposition testimony of appellant's medical expert on causation and damages, and appellant's deposition testimony regarding her course of treatment for purposes of determining the statute of limitations.

Dr. Caldwell, appellant's cancer specialist, provided medical expert testimony. Based upon the size of the cancer and the extent it had metastasized by the time of appellant's surgery in June 1987, Dr. Caldwell believed the mass was big enough in March 1986 that respondent could have felt it during a physical examination and that it would have shown up on a mammogram. Based upon the same indicia, Dr. Caldwell also believed the cancer could have been palpable and traceable by mammogram in 1984. Dr. Caldwell considered it more probable than not that the cancer had not spread to the lymph nodes before 1984. By March 1986, if cancer had spread to the lymphatic system, Dr. Caldwell believed probably fewer than all four lymph nodes were involved. Dr. Caldwell believed that more probably than not the cancer metastasized into the lymphatic system between March 1986 and June 1987.

With regard to appellant's prognosis, Dr. Caldwell believed appellant to have a better than 50% chance she'll survive for 20 years, and a 30% or greater chance of recurrence because the cancer had spread to four of her lymph nodes before discovery, surgery and chemotherapy. Had appellant been diagnosed and treated before the cancer metastasized, her likelihood of recurrence would probably only be 15–25%.

Based upon this record, the trial court determined that appellant's last date of treatment by respondent related to the mass in appellant's breast was in 1984 and that her negligence claim arising from that treatment was barred by the statute of limitations. On that basis the trial court denied appellant's motion to amend her complaint. With regard to the action based on respondent's 1986 negligence, the trial court found the evidence insufficient to establish a causal relationship between the delay in treatment and any harm to appellant and granted summary judgment to respondent.

## ISSUES

1. Did the trial court err in applying the "last date of treatment rule" to determine the viability of appellant's negligence claim?

2. Did the trial court err in granting summary judgment for respondent based upon the conclusion that appellant had failed to establish a prima facie malpractice case?

3. Does the record on appeal include the report on breast cancer appended to respondent's brief?

ANALYSIS

1. *Appellant's motion to amend the complaint*

■ Minn.Stat. § 541.07(1) (1990) provides a two year statute of limitations for "all actions against physicians * * * for malpractice, error, mistake or failure to cure." Under Minnesota's "termination of treatment rule," the statute of limitations begins to run when a patient ceases treatment with the doctor. *Schmit v. Esser*, 183 Minn. 354, 358, 236 N.W. 622, 624–25 (1931); *Willette v. Mayo Found.*, 458 N.W.2d 120, 121 (Minn.App.1990), *pet. for rev. denied* (Minn. Sept. 14, 1990).

■ Appellant argues that her "last day of treatment" with respondent occurred on March 10, 1986 when he examined her for the last time. We do not agree. In an effort to define *when* treatment ceases, the court has explained:

> So long as the relation of physician and patient continues as to the particular injury or malady which he is employed to cure, and the physician continues to attend and examine the patient in relation thereto, and there is something more to be done by the physician in order to effect a cure, it cannot be said that the treatment has ceased. That does not mean that there must be a formal discharge of the physician or any formal termination of his employment. If there is nothing more to be done by the physician as to the particular injury or malady which he was employed to treat or if he ceases to attend the patient therefor, the treatment ordinarily ceases without any formality.

*Schmit*, 183 Minn. at 358–59, 236 N.W. at 625.

We believe the operative words in this analysis are "particular injury or malady." *Id.* at 358, 236 N.W. at 625. The "particular injury or malady" at issue here was the mass in appellant's breast. She did not consult respondent about this condition af-

ter he dismissed it as a fibrous mass during the examination between 1982 and 1984; respondent did not treat, examine, or monitor this mass after the 1982–84 examination, and there was "nothing more to be done by * * * [respondent] as to the particular injury or malady which he was employed to treat" according to his diagnosis of her condition. *Id.* at 359, 236 N.W. at 625.

Appellant offers her March 1986 examination as proof of continuing treatment with respondent. Again, we cannot agree. The statute begins to run on the last date a patient consults her physician for a specific course of treatment, even if she returns to that physician at a later date for treatment of an unrelated condition. *Murray v. Fox*, 300 Minn. 373, 377–78, 220 N.W.2d 356, 359 (1974). Appellant's 1986 examination was for a routine physical prior to surgery for a cervical polyp; she was not consulting respondent about the mass in her breast at that time. Respondent noticed the mass during the examination but neither he nor appellant pursued the issue of investigating or treating it.

Appellant's first course of treatment for her breast ended with the examination that occurred sometime between 1982 and 1984, and a separate course of treatment for an unrelated condition began two years later when she consulted respondent about the cervical polyp in March 1986. *See id.* The trial court properly found appellant's negligence claim barred by the two year statute of limitations and properly denied her motion to amend the complaint.

2. *Appellant's allegations of respondent's 1986 negligence*

On appeal from summary judgment, this court must review the record to determine whether any genuine issues of material fact exist and whether the trial court erred as a matter of law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988).

> When reviewing a summary judgment, we "must take a view of the evidence most favorable to the one against whom the motion was granted."

*Id.* (quoting *Abdallah Inc. v. Martin,* 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954)).

In challenging summary judgment for respondent, appellant next argues the trial court erred when it determined that appellant failed to establish a prima facie malpractice case for respondent's alleged negligence in 1986. We disagree.

█ To establish a prima facie case of medical malpractice for negligent medical treatment, appellant had the burden of proving:

1. the standard of care recognized by the medical community as applicable to respondent's conduct;

2. that respondent departed from that standard; and

3. the respondent's departure from that standard was a direct cause of appellant's injuries; and

4. loss or damage.

*Reinhardt v. Colton,* 337 N.W.2d 88, 94 (Minn.1983). This appeal focuses on the causation prong of the test.

█ Appellant argues that respondent's negligence created a reduced chance of survival and an increased chance of recurrence of cancer because he misdiagnosed and failed to treat promptly the mass in appellant's breast. This argument states a claim for "loss of chance," a medical malpractice doctrine that Minnesota has neither adopted nor rejected. *Kalsbeck v. Westview Clinic, P.A.,* 375 N.W.2d 861, 870 (Minn.App.1985), *pet. for rev. denied* (Minn. Dec. 30, 1985). This court, as primarily an error-correcting court, is hesitant to adopt new theories of law. *E.g., St. Aubin v. Burke,* 434 N.W.2d 282, 284 (Minn.App.1989), *pet. for rev. denied* (Minn. Mar. 29, 1989). We have recently rejected a similar claim under the loss of chance doctrine. *See Leubner v. Sterner,* 483 N.W.2d 518, 521 (Minn.App.1992), *pet. for rev. granted* (Minn. June 10, 1992). Even if Minnesota were to recognize the loss of chance doctrine, however, it only arises when negligence has already been

established. *See Kalsbeck,* 375 N.W.2d at 870. Negligence was not established in *Leubner,* nor has it been established in this case.[1]

To establish a prima facie case of negligence, appellant had the burden of presenting evidence:

which affords a reasonable basis for one to conclude that it is more likely than not that [respondent's] conduct was a substantial factor in bringing about the result. * * * Proof of causation cannot rest on conjecture and the mere possibility of such causation is not enough to sustain [appellant's] burden of proof. * * * Furthermore, when the causal relation issue is not one within the common knowledge of laymen, causation in fact cannot be determined without expert testimony.

*Walstad v. University of Minn. Hosps.,* 442 F.2d 634, 639 (8th Cir.1971), *cited in Walton v. Jones,* 286 N.W.2d 710, 715 (Minn.1979).

Here, Dr. Caldwell testified that in 1984 the tumor was probably palpable, but the cancer probably had not yet metastasized to the lymphatic system. Dr. Caldwell opined that the cancer may have begun spreading into the lymph nodes by March 1986, and that more probably than not the cancer metastasized into the lymphatic system between March 1986 and June 1987 when Dr. Chilgren discovered the cancer that had metastasized into four lymph nodes. Surgery and chemotherapy eradicated the cancer, however, and appellant has had no signs of recurrence.

Dr. Caldwell prognosticated a 15–25% likelihood of recurrence had appellant been diagnosed and treated before the cancer metastasized, and a 30% or greater chance of recurrence in her present condition. However, Dr. Caldwell believed appellant still has a better than 50% chance of survival. This evidence is insufficient to establish that it is now more probable that appellant will die earlier than if respondent had

---

1. We read *Leubner* as a discussion of the loss of chance doctrine, not an adoption of it. Further, to the extent that one could argue *Leubner* implicitly adopted the doctrine, we note that the

Minnesota Supreme Court has granted the petition for further review and the case is thus of minimal precedential value to our analysis here.

diagnosed and treated the cancer before it metastasized. *See Cornfeldt v. Tongen,* 295 N.W.2d 638, 640 (Minn.1980); *Walton,* 286 N.W.2d at 715. Therefore, appellant has raised no material fact issue as to the causation element.

■ Further, appellant's theory that respondent's failure to diagnose and treat her pre-existing condition must fail as a matter of law. While a person may recover damages for "the additional injury over and above the consequences which normally would have followed from the pre-existing condition absent defendant's negligence," she must first establish that a defendant's negligence caused the aggravation of the pre-existing condition. *Schore v. Mueller,* 290 Minn. 186, 189, 186 N.W.2d 699, 701 (1971). Given the small variation in survival and recurrence rates, appellant has not proven that the extent of her cancer in 1987 was caused "more probably than not" by respondent's failure to diagnose her in 1986. *See Cornfeldt,* 295 N.W.2d at 640.

In addition, when Dr. Caldwell attempted to extrapolate from the 1987 tumors the extent of cancer growth in 1984 or 1986, he conceded that some breast cancer is very difficult to detect and may exist for years before being discovered. He also recognized that if, as respondent claims, no mass existed when respondent examined appellant, the cancer found in 1987 may have developed within the 14–month period since respondent had last examined appellant.

■ Appellant's claim that she would not have had to undergo chemotherapy if respondent had properly diagnosed the cancer in 1986 also must fail. Dr. Caldwell acknowledged that proper diagnosis in 1986 would more probably than not have revealed cancer in the lymph nodes, though in fewer than the four nodes affected in 1987. Thus, chemotherapy would have been necessary to treat appellant for cancer in her lymphatic system even if she had been properly diagnosed in 1986.

While we do not diminish the seriousness of appellant's illness or prognosis, we do not find a legal basis for recovery when appellant's chances for survival remain better than 50%, she has a less than probable chance of recurrence, and she is currently free of cancer.

3. *Appellant's motion to strike*

■ Appellant has moved this court to strike the United States General Accounting Office ("GAO") report on breast cancer appended to respondent's brief on the grounds that the document was not part of the trial court record and therefore cannot be part of the record on appeal. We agree.

■ Only the papers filed in the trial court, the exhibits, and the transcript constitute the record on appeal. Minn.R.Civ. App.P. 110.01. The court will strike documents included in a party's brief that are not part of the appellate record. *Chizmadia v. Smiley's Point Clinic,* 428 N.W.2d 459, 461 (Minn.App.1988), *pet. for rev. denied* (Minn. Oct. 26, 1988), *cert. denied,* 490 U.S. 1084, 109 S.Ct. 2109, 104 L.Ed.2d 669. (1989).

The GAO issued its report in December 1991, after the trial court had already decided this case. Thus, the report was not before the trial court and is not part of the record on appeal. Appellant's motion to strike the report is granted.

■ Appellant also seeks attorney fees in conjunction with this motion. The award of attorney fees on appeal rests within the discretion of this court. *See Roehrdanz v. Roehrdanz,* 438 N.W.2d 687, 691 (Minn. App.1989), *pet. for rev. denied* (Minn. June 21, 1989). We do not find attorney fees warranted in this case.

## DECISION

Appellant completed treatment for her breast at an examination sometime between 1982 and 1984 when respondent concluded appellant had a fibrous mass in her breast and took no further steps to treat her condition. The trial court properly denied appellant's motion to amend on the ground that the statute of limitations for a negligence action based on that examination had expired.

The evidence appellant presented to the court did not establish that respondent's

conduct in 1986 more probably than not caused her cancer to advance and metastasize. When appellant still has a better than 50% chance of survival, she may not recover for respondent's alleged failure to diagnose and treat her condition. The trial court properly granted respondent summary judgment. Appellant's motion to strike the GAO report is granted.

Affirmed.