MARY SILVER, TRUSTEE FOR THE HEIRS OF SOLOMON I. SILVER, v. DR. PAUL D. REDLEAF.

194 N. W. 2d 271.

January 28, 1972—No. 42975.

*Firestone, Fink, Krawetz, Miley & Maas* and *James P. Miley,* for appellant.

*Cummins, Gislason, Sheahan, Joyce & McHaffie,* for respondent.

Heard before Knutson, C. J., and Murphy, Otis, and Peterson, JJ. Case considered and decided by the court en banc except as to Mr. Justice Otis, who withdrew after oral argument.

Per Curiam.

This is an action for wrongful death by medical malpractice instituted by plaintiff, Mary Silver, against defendant, Paul D. Redleaf, the attending physician for her deceased husband, Solomon I. Silver. A verdict for defendant was directed because plaintiff had failed to prove defendant's causal negligence with competent medical testimony. This appeal is from the trial court's order denying plaintiff's motion for a new trial. We affirm.

Solomon I. Silver died at Miller Hospital on Wednesday, January 17, 1968. He had been a patient of defendant, Dr. Redleaf, since December 24, 1964, at which time he had been hospitalized for a heart ailment. He was hospitalized for subsequent heart episodes in 1965 and 1967, the latter hospitalization additionally involving emphysema and a neck

pain related to old age. He had otherwise been in generally good health for a man of almost 74.

In the late afternoon of Monday, January 15, 1968, Dr. Redleaf attended decedent at the Silver home in response to decedent's complaint of severe abdominal pain that had commenced the prior day. Dr. Redleaf diagnosed his ailment as stomach flu or inflammation of the gall bladder, for which he prescribed medication. The following day, Tuesday, plaintiff telephoned Dr. Redleaf to report that decedent continued to have severe pain, and she thereafter called at approximately hourly intervals. Dr. Redleaf, however, expected that decedent would have stomach pain and thought the suspected symptoms corroborated his initial diagnosis. Plaintiff urged that Dr. Redleaf hospitalize decedent, but, perceiving no emergency to warrant it, the doctor declined to do so. However, he did make arrangement for a gall bladder check and outpatient X-rays to be made the next day. At 6 p. m. on Tuesday plaintiff called to report that decedent was passing considerable blood in his stool, but Dr. Redleaf, who was aware that decedent had previously had blood in his urine while under prior medication, attributed any presence of blood in the stool to straining during evacuation.

Late Tuesday, Dr. Redleaf called plaintiff's adult daughter, whose husband is a physician, to tell her that her parents were getting too excited and that her father was not seriously ill. Dr. Redleaf had received similar telephone calls of concern from plaintiff when decedent had previously been attended for neck pain. The daughter requested that her father be hospitalized simply for her mother's peace of mind, but there is no indication that the daughter conveyed any real sense of anxiety either to Dr. Redleaf or to her own physician-husband.

Early Wednesday morning, Dr. Redleaf stopped at the Silver home, but his examination still gave him no cause for alarm. After a subsequent call from plaintiff, he did arrange to have decedent admitted to Miller Hospital for preliminary tests. Dr. Redleaf went to the hospital shortly before noon and wrote an emergency admission note and order sheet detailing the tests which were to be made. Because it was his day off, Dr. Redleaf left his patient in his partner's charge. Decedent arrived at the hospital at about 1 p. m. on Wednesday, in extremis. He was agitated and incoherent, and no blood pressure or pulse was obtainable. Although the precise time of his death is disputed, it occurred within about 2 hours after decedent's arrival at the hospital.

Dr. Redleaf testified that hospitalization on Monday or Tuesday would not have averted death. Plaintiff, on the other hand, offered no medical testimony in support of her claim that Dr. Redleaf was causal-

ly negligent. Decedent's son-in-law, for reasons which are not disclosed on this record, did not testify.

We have repeatedly held that plaintiff, in order to prove negligence in a malpractice action, must offer expert medical testimony both to state the standard of medical care and the treatment recognized by the medical community and to establish that the defendant physician in fact departed from that standard, it being settled that a physician is not responsible for the consequences of an honest mistake or error of judgment in his diagnosis or treatment. Yates v. Gamble, 198 Minn. 7, 12, 268 N. W. 670, 673 (1936); Berkholz v. Benepe, 153 Minn. 335, 337, 190 N. W. 800 (1922); Moeller v. Hauser, 237 Minn. 368, 376, 54 N. W. 2d 639, 644 (1952); Manion v. Tweedy, 257 Minn. 59, 70, 100 N. W. 2d 124, 132 (1959); Hoffman v. Naslund, 274 Minn. 521, 531, 144 N. W. 2d 580, 588 (1966); Swanson v. Chatterton, 281 Minn. 129, 134, 160 N. W. 2d 662, 666 (1968). There are situations in which the negligence of the physician is obvious even to laymen. See, Miller v. Raaen, 273 Minn. 109, 114, 139 N. W. 2d 877, 880 (1966), but we are persuaded that the situation here does not constitute such an exception to the usual rule.

An even greater impediment to plaintiff's recovery is the absence of any proof that Dr. Redleaf's action or inaction was the direct cause of decedent's death. Plaintiff had the burden to show that it was more probable that death resulted from some negligence for which defendant was responsible than from something for which he was not responsible. Yates v. Gamble, 198 Minn. 7, 14, 268 N. W. 670, 674 (1936); Hoffman v. Naslund, 274 Minn. 521, 532, 144 N. W. 2d 580, 589 (1966). This could be proved only by expert testimony. Hoffman v. Naslund, *supra;* Stahlberg v. Moe, 283 Minn. 78, 85, 166 N. W. 2d 340, 345 (1969); Miller v. Raaen, 273 Minn. 109, 120, 139 N. W. 2d 877, 883 (1966).

Hindsight may impel lay speculation that decedent's illness was incorrectly diagnosed and that, had he been hospitalized from the outset, a correct diagnosis and cure might have resulted. But a layman might as well speculate that, in view of the short time between the onset of this elderly decedent's illness and his death, such action would nevertheless have been unavailing. Only expert testimony could support a finding of fact on this critical issue. Thorkeldson v. Nicholson, 154 Minn. 106, 191 N. W. 269 (1922). Without such testimony the trial court had no alternative but to direct a verdict for defendant.

Affirmed.

MR. JUSTICE OTIS, having disqualified himself subsequent to oral argument, took no part in the consideration or decision of this case.

MR. JUSTICE HACHEY took no part in the consideration or decision of this case.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.