**James F. HARVEY, Appellant,**

v.

**FRIDLEY MEDICAL CENTER, P.A., et al, Respondents.**

No. 81–361.

Supreme Court of Minnesota.

Jan. 29, 1982.

Gordon C. Moosbrugger, St. Paul, for appellant.

Geraghty, O'Loughlin & Kenney and Robert M. Mahoney, St. Paul, for respondents.

SCOTT, Justice.

Plaintiff James F. Harvey appeals from a directed verdict in favor of defendants Charles P. Floyd and Associated Surgeons, Ltd., in this action for medical malpractice. The sole issue on appeal is whether Harvey presented sufficient evidence on the issue of proximate cause to raise a jury question. We agree with the district court that the evidence, considered in its entirety and with all reasonable inferences favorable to Harvey, was inadequate and, therefore, we affirm.

On March 13, 1979, Harvey experienced pain in his neck and shoulder after an accident at work. He was seen at the Fridley Medical Center by Dr. John Marshall, a family practitioner, who X-rayed the area. Examination of the X-rays suggested the presence of a foreign object 1¼ inches long and ⅛ inch wide in the trapezius muscle of Harvey's neck. There was no entrance wound or scar and Harvey could not explain the object's presence. Because he was uncertain of the object's nature, Marshall sent the X-rays to a radiologist and recommended that Harvey see Dr. Charles Floyd, a general surgeon who consulted with Marshall's group.

On March 22, 1979, Harvey was examined by Floyd, who detected an area of resistance in the neck muscle. Floyd went to the X-ray department to review the films but they had not been returned by the radiologist. He contented himself with the radiologist's report and made no further effort to obtain the actual X-rays. Floyd recommended that the object be removed in outpatient surgery under local anesthesia.

Four days later Harvey went to the emergency room at Unity Hospital for the surgery. Floyd again examined him and detected the resistance in the muscle. He injected anesthetic, made an incision through the fatty tissue, and began to explore the muscle fibers and deeper tissue. When he did not locate the object, he injected more anesthetic and extended the incision. He still could not find any foreign object and concluded that either the object was too deep to recover using an out-patient procedure or that there was no object but rather a calcification of fibrous tissue that lighted up on X-ray. He removed a sample of fibrous tissue and closed the wound. The fibrous tissue was normal.

Harvey returned to Floyd on April 5, 1979, for removal of the sutures. Although he was still having pain, it was normal to the procedure. Floyd told Harvey to come back if he had further problems. Harvey did not return to Floyd but in August 1979 he sought treatment for his neck problem at the Stillwater Clinic. X-rays were taken

which indicated the continued presence of a foreign object. A comparison of these X-rays with the earlier ones reveals that the object had migrated upward and outward toward the surface of the skin. The object was removed at St. Paul Ramsey Hospital under the supervision of Dr. John Perry. The procedure took 10 minutes under local anesthesia. The object was a shard of glass.

Harvey commenced this suit against the Fridley Medical Center, Dr. Floyd, and Associated Surgeons, Ltd., Dr. Floyd's group. The complaint alleged negligent treatment by failing to remove the foreign body causing scarring, disfigurement and pain and requested damages of $50,000. Harvey voluntarily dismissed the Fridley Medical Center but presented his case against the remaining defendants. At the close of the plaintiff's case, the trial court granted defendants' motion for a directed verdict on the ground that Harvey had not provided expert testimony that failure to comply with the standard of care, *i.e.*, failure to examine the X-rays, was the direct cause of the injury, *i.e.*, failure to remove the glass.

■■ A motion for directed verdict presents a question of law regarding the sufficiency of the evidence to present a fact issue appropriate to jury determination. For purposes of the motion, the trial court must consider the record in its entirety and treat as credible the evidence favoring the adverse party and all inferences that may reasonably be drawn from that evidence. If it would be clearly the court's duty to set aside a contrary verdict as manifestly against the evidence, a directed verdict should be granted. *Zinnel v. Berghuis Construction Co.*, 274 N.W.2d 495 (Minn.1979). This court applies the same standard.

■ Causation in a medical malpractice case must be proved by expert testimony when the issue is not within the common knowledge of laymen. *See Walstad v. University of Minnesota Hospitals*, 442 F.2d 634, 639 (8th Cir. 1971). Harvey argues that expert testimony established the utility of X-rays in determining the size, shape and location of a foreign object and that the

jury reasonably could have inferred from that evidence that had Floyd used X-rays he would have located the foreign body. In our view, however, the contribution of X-ray information to surgical success is a matter of medical expertise and expert testimony concerning the relative success rates of surgery using X-rays and surgery without using X-rays was required.

■■ When expert testimony is essential to a plaintiff's proof, it "must demonstrate a reasonable *probability* that defendant's negligence was the proximate cause of the injury." *Walton v. Jones*, 286 N.W.2d 710, 715 (Minn.1979) (emphasis in original). Alternatively stated, testimony must establish that "it was more probable that [the injury] resulted from some negligence for which defendant was responsible than from something for which he was not responsible." *Smith v. Knowles*, 281 N.W.2d 653, 656 (Minn.1979) (quoting *Silver v. Redleaf*, 292 Minn. 463, 465, 194 N.W.2d 271, 273 (1972)).

■ Harvey attempted to establish his case through the testimony of Dr. Perry. Dr. Perry expressed the opinion that a surgeon exercising due care would review X-rays before proceeding with surgery. That opinion gives rise to an inference that use of X-rays to some extent enhances the chances of surgical success. A jury finding of causation, however, based on such testimony alone would necessarily be the product of conjecture and speculation since Dr. Perry did not indicate that the failure to consult X-rays probably caused the unsuccess. In fact, Dr. Perry's testimony suggests that he would not agree that it was more probable that the surgery's failure resulted from not reviewing the X-rays than from some other cause:

Q Doctor, does the taking of x-ray film guarantee in a situation such as this that the doctor will be successful in locating the foreign body?

A Not at all.

Q Have there been occasions that you have been aware of where physicians exploring for foreign bodies with the benefit films have been unsuccessful?

A Very often. As a matter of fact, we many times discourage patients being explored for foreign bodies if we don't think they are harmful because we very often do not find them.

Under these circumstances, it was entirely proper to direct a verdict in defendants' favor.

Affirmed.

YETKA, Justice (dissenting).

There was, in my opinion, adequate testimony that the X-rays should have been consulted before surgery at Fridley Medical Center. A portion of Dr. Perry's testimony not specifically cited in the majority opinion was this:

Q. What is your opinion?

A. I think that a surgeon who is going to explore an area of the body for a foreign body ought to look at the X-rays themselves.

Of course, in this case, the doctors at the Stillwater Clinic did consult the X-rays, did locate the more than one inch-long, wedge-shaped piece of glass, and did remove it. The action speaks for itself. If Fridley Clinic had consulted the X-rays, it is reasonable to assume they too would have located the object and removed it.

Therefore, I would reverse and remand for a new trial.

PETERSON, Justice (dissenting).

I join in the dissent of Justice Yetka.

WAHL, Justice (dissenting).

I join the dissent of Justice Yetka.

OTIS and KELLEY, JJ., took no part in the consideration or decision of this case.