Georgena **LEUBNER**, et al., Respondents,

v.

Barbara J. **STERNER**, M.D., et al., Defendants,

Ronald C. **Jensen**, M.D., et al., petitioners, Appellants.

No. C5–91–2239.

Supreme Court of Minnesota.

Dec. 18, 1992.

Kay Nord Hunt, Phillip A. Cole, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for appellants.

Judy Emmings, John W. Carey, Sieben, Grose, Von Holtum, McCoy & Carey, Ltd., Fairfax, for respondents.

Mary Prentnieks, Suzanne Veenhuis, Minnesota Medical Ass'n, Minneapolis, for amicus curiae MN Medical Assoc.

SIMONETT, Justice.

■ We hold there is no such thing as a medical malpractice cause of action for "negligent aggravation of a preexisting condition," and reverse the court of appeals.

Plaintiff-respondent Georgena Leubner, a 54–year–old woman, visited her family doctor, who confirmed two small lumps in the area of her left breast. A mammogram was negative. The family doctor referred plaintiff to defendant-appellant Dr. Ronald C. Jensen, who, a week later, on June 25, 1987, examined Ms. Leubner but chose not to order a biopsy at that time. Instead Dr. Jensen scheduled another appointment for December 19, 1987, about 6 months later. When Dr. Jensen examined his patient on the appointed day, he noticed the two nodules were enlarged and advised a biopsy.

The biopsy was performed in February 1988, about 7 months after Dr. Jensen's first examination. (Plaintiff did not have the biopsy sooner after the December 19 visit because her health insurance was being transferred to another plan in which Dr. Jensen did not participate.) The biopsy revealed cancer in the patient's left breast and a partial mastectomy was done. Since then, plaintiff has had several local recurrences of cancer in her left breast, ultimately resulting in a total mastectomy of the breast and two additional instances in which chest-wall lesions were discovered and removed.

Plaintiff and her husband commenced this medical malpractice action against defendant Dr. Jensen and his clinic (and others, since dismissed from the action). At a pretrial hearing in August 1991, the question arose whether plaintiffs could prove the necessary causation for their medical malpractice claim. Pursuant to agreement, for the purpose of a defense motion, plaintiffs submitted the following written offer of proof:

> Dr. Newman [plaintiff's expert] will opine that if Georgena Leubner had been diagnosed and surgically treated in July, 1987, rather than February 1988, she would possess an increased chance of survival from her disease of breast cancer, in contrast to present chance of survival with diagnosis and treatment in February 1988. Her decreased chances [sic] of survival was directly caused by the delay in diagnosis and treatment.

Presumably, for the purpose of resolving the causation issue, we are also asked to assume that the delay in diagnosis and treatment could be found to be negligent.

The trial court ruled that plaintiffs had failed to sustain their burden of proof on causation and granted summary judgment in favor of the defendants. The trial court concluded plaintiffs' offer of proof, as a matter of law, failed to establish that it was more likely than not that the specified consequences resulted from the alleged negligence. The trial court also rejected plaintiffs' claim under a "loss of chance" theory.

The court of appeals ruled that plaintiffs' "loss of chance" claim was "misplaced in the present case" and affirmed summary judgment for defendants on that theory of recovery. The court of appeals went on, however, and decided (although the parties had not raised the theory) that plaintiffs

had established a prima facie "cause of action for negligent aggravation of pre-existing disease," which, said the court, is a "long recognized" cause of action in this state. The case was remanded for trial on this theory. *Leubner v. Sterner,* 483 N.W.2d 518 (Minn.App.1992). In arriving at this conclusion, the court of appeals went beyond plaintiffs' formal offer of proof and cited an opinion of Dr. Newman in another affidavit that defendant's negligence resulted in a decline from 70–to–80 percent to a 40–percent chance of being free of disease 5 years after the initial 1987 examination; and that Dr. Jensen's negligence caused "twice the risk of having positive nodes and for distant metastases."

We granted the defendants' petition for further review. Plaintiffs did not file a notice of review to preserve their "lost chance of survival" claim. On the other hand, defendants frame the issue before us as whether plaintiffs failed to present a prima facie case of medical malpractice on the causation element.

■ In order to establish a prima facie case of medical malpractice in this state, a plaintiff must prove, among other things, that it is more probable than not that his or her injury was a result of the defendant health care provider's negligence. *See, e.g., Plutshack v. University of Minnesota Hospitals,* 316 N.W.2d 1 (Minn.1982); *Cornfeldt v. Tongen,* 295 N.W.2d 638, 640 (Minn.1980). Failure to present such proof (normally in the form of expert testimony) mandates either summary judgment or a directed verdict for the defendant. *Cf. Carlson v. Fredrickson & Byron, P.A.,* 475 N.W.2d 882, 886 (Minn.App.1991), *pet. for rev. denied* (Minn., October 31, 1991) (legal malpractice case). The guiding principle behind this rule is that a jury should not be permitted to speculate as to possible causes of a plaintiff's injury or whether different medical treatment could have resulted in a more favorable prognosis for the plaintiff. *See Smith v. Knowles,* 281 N.W.2d 653, 656 (Minn.1979); *Cornfeldt v. Tongen, supra.* This court has reaffirmed the "more probable than not" standard for establishing causation in medical malprac-

tice claims in case after case. *See, e.g., Harvey v. Fridley Medical Center, P.A.,* 315 N.W.2d 225, 227 (Minn.1982); *Silver v. Redleaf,* 292 Minn. 463, 465, 194 N.W.2d 271, 273 (1972). Thus the standard in this state is both well settled and well grounded in considerations of both equity and public policy.

■ Causation, by definition, is something producing a certain effect or result. Legal causation cannot be discussed intelligently without reference to the injury claimed to be caused. In this case, if the injury claimed is the failure to survive (*i.e.,* the patient's death), plainly the proffered proof of causation fails. Everyone agrees that the offer of proof fails to establish that death will more probably than not result from Dr. Jensen's alleged negligence.

Arguably, the injury claimed to be caused is a decreased percentage chance of surviving, whether or not the patient, in fact, has survived. Here the difficulty is perhaps not so much in proving causation as "more probable than not," but in what appears to be the amorphous and speculative nature of the asserted "injury," especially as it applies to a particular patient. In any event, plaintiffs have not asserted such a claim.

Rather, plaintiffs contend that the claimed injury is "the enlarged, unchecked tumor." But the tumor was removed in February 1988, just as it would have been removed 7 months earlier. It is unclear what the damages would be for removal of a larger rather than a smaller tumor. Plaintiff's theory becomes clearer when she goes on to say that she "faces increased risks of recurrence and metastases along with a decreased likelihood of survival as a direct result of the tumor's unchecked growth." The trouble with this theory is that, first of all, there is no proof it is more probable than not that plaintiff will not survive her cancer. Indeed, as even the court of appeals observes, "in Dr. Newman's statistical opinion, death is overwhelmingly improbable." *Leubner,* 483 N.W.2d at 521.

This leaves for consideration plaintiffs' contention that the claimed injury is the recurrence of the cancer and the resultant surgery and treatment. It is here that the court of appeals introduces its theory of a claim for negligent aggravation of a preexisting injury. There are at least two problems with this approach, aside from the fact that the court of appeals relies on materials that appear to go beyond the offer of proof.

First, Dr. Newman's opinion is that the negligent delay could result in a doubling of the risk of recurrence, from an 80–percent chance of being disease free to a 40–percent chance in 5 years. Significantly, his opinion does not say it is more probable than not that Ms. Leubner's recurrence of cancer resulted from Dr. Jensen's alleged negligence. It remains equally probable that other outside factors were causes of the recurrence. To present this kind of proof to a jury would result in the very speculation that this court ruled impermissible in *Cornfeldt* and *Smith*.

This is a failure-to-diagnose case; there is no claim the disease itself, the cancer, was caused by the physician, but rather that the physician's delay resulted in harm that could have been prevented. Going outside the offer of proof, the court of appeals cited a 20–year–old medical textbook that delay in diagnosis "invariably results in a more serious prognosis." *Leubner*, 483 N.W.2d at 522. Something more than this isolated conclusionary citation (which defendants claim is contradicted by newer scientific research) is needed to make out a prima facie case that in this instance it was "more probable than not" that delay in diagnosing a cancer caused other cancer to appear. Indeed, as defendant-appellants note, if delay in diagnosis is enough in itself, expert testimony on causation would not be necessary.

Finally, it is inappropriate and misleading to transplant "negligent aggravation of a preexisting condition" from an inapposite tort situation into the field of medical malpractice. "Aggravation of a preexisting physical condition" is a measure of damages, not a theory of liability, even if one puts the word "negligent" in front of the phrase. Aggravation damages occur when an injured plaintiff seeks to recover additional damages for a condition the plaintiff already had prior to being injured. A typical example is a plaintiff troubled with an arthritic neck who sustains a traumatic injury to the cervical spine in an auto accident which makes the neck worse. The measure of damages is the pain and disability of the neck that is over and above the preaccident pain and disability. *See* Minn. Jury Instruction Guides (3d ed.) No. 163, *Items of Personal Damage—Aggravation* ("person who has a defect or disability at the time of an accident is nevertheless entitled to damages for any aggravation of such pre-existing condition, even though the particular results would not have followed if the injured person had not been subject to such pre-existing condition * * *."). Put another way, damages for aggravation of a preexisting condition are simply a means to assure that the defendant pays only for the harm he causes, not the harm plaintiff already had. In the example above cited, the plaintiff must still, of course, show by a fair preponderance of the evidence that the accident caused the neck injury and aggravated the arthritis. The two cases cited by the court of appeals say no more than this. *See Schore v. Mueller*, 290 Minn. 186, 186 N.W.2d 699 (1971); and *Bloomquist v. Minneapolis Furniture Co.*, 112 Minn. 143, 148, 127 N.W. 481, 482 (1910).

One can think of medical malpractice cases where there would be damages for aggravation of a preexisting condition; but, particularly in malpractice cases, the plaintiff cannot use the fact her condition has worsened as proof the defendant doctor made it worse. Plaintiff must still show causation, usually with expert testimony, which meets the "more probable than not" standard.

The court of appeals ruling is reversed and the trial court's summary judgment for defendants is reinstated.

Reversed.