**Jocelyn DICKHOFF by her parents and natural guardians Joseph DICKHOFF and Kayla Dickhoff, Appellants,**

v.

**Rachel GREEN, M.D., et al., Respondents.**

No. A11–402.

Court of Appeals of Minnesota.

Jan. 3, 2012.

Review Granted March 20, 2012.

Kay Nord Hunt, Stephen C. Rathke, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN, for appellants.

William M. Hart, Meagher & Geer, P.L.L.P., Minneapolis, MN, and Steven R. Schwegman, James S. McAlpine, Quinlivan & Hughes, P.A., St. Cloud, MN, for respondents.

Considered and decided by KALITOWSKI, Presiding Judge; MINGE, Judge; and ROSS, Judge.

## OPINION

ROSS, Judge.

This medical-malpractice case involves a delayed diagnosis of potentially terminal cancer in a newborn. The baby's mother alleges that she showed the pediatrician a bump on the newborn shortly after the birth and at multiple appointments in the year that followed. The physician did not note the bump on the child's medical chart until her one-year checkup, after which the bump was diagnosed to be alveolar rhabdomyosarcoma, a rare form of childhood cancer. Kayla and Joseph Dickhoff sued their daughter Jocelyn's physician, Dr. Tollefsrud, and Family Practice Medical Center of Willmar, alleging that reasonable care would have led to an earlier diagnosis while the disease was curable. The district court dismissed the medical-malpractice claim as a reduced-chance claim barred in Minnesota. It also denied damages based on the recurrence of the cancer, holding that the parents' expert's affidavit did not establish that it was more probable than not that the recurrence was the result of negligence. We reverse because the medical-malpractice claim is not a claim for reduced chance and the expert affidavit supports the allegation that the physician's negligence caused the child's chances of recurrence to move from unlikely to probable.

## FACTS

Jocelyn Dickhoff was born on June 12, 2006, to Kayla and Joseph Dickhoff. Jocelyn came home two weeks later and on that day Kayla alleges that she noticed a bump on Jocelyn's buttocks. The next day, Kayla and Joseph brought Jocelyn to Dr. Rachel Tollefsrud (formerly Dr. Rachel Green) at Family Practice Medical Center of Willmar for her two-week well-baby checkup. Kayla alleges that during the checkup she showed Dr. Tollefsrud the bump. The bump was moveable under the skin and Jocelyn was not sensitive to it. Kayla alleges that Dr. Tollefsrud told her to keep an eye on it, but not to worry because it may be just a cyst.

The parties dispute when and how often Kayla and Dr. Tollefsrud discussed Jocelyn's bump over the next year. Kayla testified that she pointed out the bump to Dr. Tollefsrud at numerous appointments and that, as the year progressed, the bump grew in size and became less moveable. Dr. Tollefsrud recalled having a conversation about Jocelyn's bump before Jocelyn's one-year checkup. She also recalled examining the buttocks area and observing a bump that was about 0.6 centimeters in size and moveable under the skin, but she could not recall at which visit that had occurred. Dr. Tollefsrud did not document the bump in Jocelyn's medical file until Jocelyn's one-year checkup on June 14, 2007. She then noted that Jocelyn "[h]as had small lump on left buttock, which had been unchanged, now has gotten larger." The bump had grown to four centimeters wide.

Kayla took Jocelyn to other doctors, and eventually to Dr. Brenda Weigel at the end of July 2007. Dr. Weigel is a pediatric oncologist. The next month Dr. Weigel diagnosed Jocelyn with stage IV alveolar rhabdomyosarcoma (RMS), a cancer of the muscle, and concluded that the cancer had metastasized. Doctors at Sloan–Kettering in New York later opined that Jocelyn's cancer was at stage III.

About 350 children are diagnosed annually with RMS, and children under age one generally have a worse prognosis than others. The site of Jocelyn's cancer, the perianal area, is unfavorable. Jocelyn underwent six months of chemotherapy, had the tumor surgically removed, and underwent additional chemotherapy and radiation.

The Dickhoffs brought this lawsuit on behalf of Jocelyn in April 2009. They asserted that Dr. Tollefsrud and Family Practice Medical Center negligently failed to diagnose Jocelyn's symptoms or refer them to a specialist. They alleged that the cancer would have been curable under a proper, timely diagnosis. They also alleged that Dr. Tollefsrud's and Family Practice's negligence resulted in injuries to Jocelyn that are permanent or fatal and will result in future expenses, pain, disability, and disfigurement.

The Dickhoffs planned to have two experts testify at trial. Dr. James Gelbmann, a family-practice physician at the Brainerd Medical Center, would have testified on the standard of care and opined that Dr. Tollefsrud deviated from it. Dr. Edwin Forman, a pediatric hematology and oncology physician, would have opined on the element of causation. This appeal focuses mainly on Dr. Forman's opinion.

Dr. Forman averred in affidavits that, had the diagnosis occurred at or shortly after the bump was noticed while Jocelyn was a neonate, her cancer more likely than not would have been curable. But because Jocelyn's cancer progressed to stage III or IV without a diagnosis and treatment, now it is more likely than not that she will not survive the cancer. Dr. Forman opined that because the cancer had progressed to stage III, she has a 60–percent chance of cancer recurrence and death, or a 40–percent chance of survival. But he believes that she would have had a better-than 60–percent chance of survival if the cancer had been timely diagnosed.

A jury trial was scheduled for May 10, 2010, but in April 2010, Jocelyn's cancer recurred and she again underwent chemotherapy. Dr. Tollefsrud and Family Practice moved the district court to preclude Jocelyn's claim for damages, characterizing it as a claim for reduced chance of life or decreased life expectancy. The district court ruled that claims for past and future medical expenses were precluded because Jocelyn needed the same care and treatment regardless of whether she had been diagnosed earlier. The remaining claim

for damages focused on the Dickhoffs' expenses arising from the recurrence of Jocelyn's cancer in April 2010.

Jocelyn's deteriorated medical condition delayed the trial. In June 2010, the respondents moved to dismiss the Dickhoffs' claim for reduced chance of life and for medical expenses based on the cancer's recurrence. They argued that the malpractice claim is essentially a claim for reduced chance of life because the allegations refer to a "shortened life expectancy" and "deprivation of normal life expectancy," and reduced chance is not recognized in Minnesota under *Fabio v. Bellomo*, 504 N.W.2d 758 (Minn.1993). They also argued that the claim for medical expenses is not supported by any admissible expert evidence proving that Dr. Tollefsrud caused the damages. The Dickhoffs responded to the motion to dismiss as a summary judgment motion and, relying on their expert's affidavits, argued that the claim is not barred as a reduced-chance claim because a medical-malpractice cause of action exists in Minnesota when a physician's negligence causes a patient's chances of survival to fall below 50 percent.

The district court granted Dr. Tollefsrud and Family Practice's motion. It held that claims for reduced chance of life, like the Dickhoffs', have been consistently rejected by the supreme court. It also dismissed their claim for medical expenses because the expert testimony did not establish that it was more probable than not that the respondents' alleged negligence, rather than the existence of the cancer itself, caused Jocelyn's damages.

The Dickhoffs appeal.

## ISSUES

I. Did the district court err by dismissing the Dickhoffs' claim as a claim for reduced chance?

II. Did the district court err by dismissing the Dickhoffs' claim for damages arising from the recurrence of Jocelyn's cancer?

## ANALYSIS

The Dickhoffs challenge the district court's dismissal of their medical-malpractice claim as a claim for reduced chance and their claim for damages arising from the recurrence of Jocelyn's cancer as unsupported by evidence. Because the district court relied on information in Dr. Forman's affidavits not originally included in the pleadings, we will treat the respondents' motion as one for summary judgment. *See* Minn. R. Civ. P. 12.03. "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. State, Dep't of Natural Res.*, 693 N.W.2d 181, 186 (Minn.2005). We review the grant of summary judgment de novo. *Zip Sort, Inc. v. Comm'r of Rev.*, 567 N.W.2d 34, 37 (Minn.1997).

## I

The Dickhoffs argue that the district court dismissed their medical-malpractice claim inappropriately by mischaracterizing it as a claim for "loss of chance." To establish a prima facie case of medical malpractice, a plaintiff must demonstrate by expert testimony (1) the applicable standard of care, (2) that the defendant breached that standard of care, and (3) that the breach was a direct cause of the plaintiff's injuries. *Fabio v. Bellomo*, 504 N.W.2d at 762. Both aspects of the third issue—causation and injury—are contested on appeal. A malpractice plaintiff must prove by expert testimony that it is more

probable than not that the alleged tortfeasor's negligence caused her injuries. *Leubner v. Sterner*, 493 N.W.2d 119, 121 (Minn.1992). Causation is generally a fact question for the jury, but where reasonable minds can arrive at only one conclusion, causation is a question of law. *Lubbers v. Anderson*, 539 N.W.2d 398, 402 (Minn.1995).

Regarding injury, the Dickhoffs maintain that Jocelyn has stated a medical-malpractice claim for failure to diagnose, relying on *MacRae v. Group Health Plan, Inc.*, 753 N.W.2d 711 (Minn.2008). *MacRae* addressed the issue of when the statute of limitations accrues in a medical-malpractice claim for cancer misdiagnosis. *Id.* at 717. More specifically, it addressed when a negligent misdiagnosis causes a patient to suffer a compensable injury. *Id.* The supreme court reasoned that "a court must determine when a cause of action accrues in cases of misdiagnosis of cancer by looking at the unique circumstances of the particular case to determine when some compensable damage occurred as a result of the alleged negligent misdiagnosis." *Id.* at 721–22. It rejected the argument that the *only* compensable damage that "can occur in a cancer misdiagnosis case [is when it] is more likely than not that the patient will not survive the disease," and held that this was one of several theories of recovery. *Id.* at 722. It emphasized that, by contrast, " 'loss of chance' due to reduced life expectancy and increased risk of recurrence" is not a compensable injury. *Id.* (Throughout this opinion, we mostly use the term *reduced chance* rather than the more common term *loss of chance* to avoid confusion between the two potential claims compared and discussed here—a mere reduction in chance of survival (*loss-of-chance* or *reduced-chance claim* ) and a reduction in chance that drops the prognosis of survival below 50 percent (*improbable-survival claim*)).

The Dickhoffs argue that because Jocelyn's chances of surviving the cancer dropped from more likely than not that she will survive, to more likely than not that she will not survive, they have stated a cause of action under *MacRae*. The respondents counter that the *MacRae* statement is merely dictum. But it was not dictum because it was necessary to *MacRae*'s holding declaring when a cause of action accrues in a cancer misdiagnosis case. And even if we read it as dictum, we still give the analysis some weight because it may foreshadow the supreme court's direction. *See In re Estate of Bush*, 302 Minn. 188, 207, 224 N.W.2d 489, 501 (1974) ("Even dictum, if it contains an expression of the opinion of the [supreme] court, is entitled to considerable weight."). This is not to say that we are bound by the supreme court's remarks that are not essential to its holdings; but where clear precedent is lacking, dicta offers at least some insight into how the court might address a question later presented.

*Leubner v. Sterner* also provides support for our understanding of *MacRae*. In *Leubner*, the appellant brought a medical-malpractice claim against her doctor for failing to diagnose breast cancer after she found two lumps. 493 N.W.2d at 120. The appellant asserted that the failure to diagnose the cancer reduced her chances of survival. *Id.* The district court granted summary judgment in favor of the defendant. *Id.* On appeal, this court affirmed on the reduced-chance theory but remanded the case on the theory of negligent aggravation of a pre-existing condition. *Id.* at 120–21. The supreme court granted review and held that negligent aggravation of a preexisting condition is not a theory of liability. *Id.* at 122. In the course of discussing causation and the appellant's injury, it stated that the appellant's claimed injury of "increased risks of recur-

rence and metastases along with a decreased likelihood of survival as a direct result of the tumor's unchecked growth" was not a viable theory because "there [was] no proof [that] it [was] more probable than not that plaintiff will not survive her cancer" and, in that case, "death was overwhelmingly improbable." *Id.* at 121. *Leubner* therefore foreshadowed the cause of action that was expressly articulated in *MacRae*, which is that a patient states a malpractice claim based on a failure to diagnose if the misdiagnosis makes it more probable than not that she will not survive her cancer.

Respondents assert that *Fabio v. Bellomo*, which expressly rejected the reduced-chance theory of liability, is controlling and dispositive. *See* 504 N.W.2d at 762. We are not persuaded. The appellant in *Fabio* sued her doctor for failing to diagnose a lump in her breast as cancer. *Id.* at 760. The appellant claimed that the delay in diagnosis "resulted in a 'loss of chance' of life expectancy and a greater risk of recurrence of cancer." *Id.* at 761. Her expert opined that her risk of cancer recurrence was about 30 percent and her chance to survive at least 20 years was 50–50. *Id.* at 763. The supreme court held that it had "never recognized loss of chance in the context of a medical malpractice action" and it declined to do so in that case. *Id.* at 762. The court also stated that even if it recognized reduced chance as a theory of recovery, the appellant would not prevail because she failed to present evidence that it was more probable than not that the cancer would recur or that she would have a *diminished* life expectancy. *Id.* at 763 (emphasis added). *Fabio's* holding does not foreclose the action here because *MacRae* succeeded *Fabio* and expressed a cause of action not discussed or contemplated in *Fabio*. And in *Fabio*, it was not more probable than not that the appellant would *not survive*.

If a cause of action does not exist based on improbable survival as expressed by *MacRae*, some patients whose cancer has been negligently misdiagnosed might have no legal recourse under *Fabio's* reduced-chance holding. A patient would theoretically have to wait until death before her malpractice claim would ripen under *Fabio* while *MacRae* holds that the claim accrued earlier for statute-of-limitations purposes. So if that patient's death occurred after the statute-of-limitations period ended, she might be barred from bringing a malpractice action altogether. We believe that the supreme court did not intend to completely foreclose the possibility of malpractice actions for negligent cancer-misdiagnosis cases involving a lengthy illness with a potentially fatal outcome. Instead, we read the caselaw only to limit those actions to circumstances in which it has become more probable than not that the patient will not survive the cancer. *See MacRae*, 753 N.W.2d at 722.

█ We are mindful of the practical difficulties this presents, particularly over disputes in which a physician's contribution to an already bleak prognosis is not large but just enough to make death most likely. And we also recognize the difficulty in determining damages in an improbable-survival case. But we are bound to interpret and apply precedent, which appears to us to allow an improbable-survival theory of recovery but not a reduced-chance theory. Other jurisdictions have avoided the difficulty by recognizing reduced chance as an actionable event in itself. *See, e.g., Roberts v. Ohio Permanente Med. Group, Inc.*, 76 Ohio St.3d 483, 668 N.E.2d 480, 484 (1996) (holding that "[i]n order to maintain an action for the loss of a less-than-even chance of recovery or survival, the plaintiff must present expert medical testimony showing that the

health care provider's negligent act or omission increased the risk of harm to the plaintiff. It then becomes a jury question as to whether the defendant's negligence was a cause of the plaintiff's injury or death."); *Alberts v. Schultz,* 126 N.M. 807, 975 P.2d 1279, 1285 (1999) (recognizing reduced chance and holding that because it can be hard to distinguish between the underlying injury and the reduced-chance injury "[t]he deterioration of the presenting problem is evidence that the chance of a better result has been diminished or lost"); *DeBurkarte v. Louvar,* 393 N.W.2d 131, 137 (Iowa 1986) (recognizing claim for reduced chance to survive cancer). Minnesota is more restrictive toward actions for medical conditions with uncertain ends after negligent misdiagnoses, but we believe *MacRae* and *Leubner* still provide for a cause of action.

Respondents also assert that Dr. Tollefsrud is not liable because there is only a 20–percent difference between Jocelyn's chances of survival with a timely diagnosis than without a timely diagnosis, based on Dr. Forman's opinion. But it is clear that Dr. Forman was simply giving a general range, not a precise estimate of Jocelyn's chances of survival. He stated that because he believed that Jocelyn's cancer was in stage III she has *no better than* a 40–percent chance of survival, but had she been timely diagnosed, her chances of survival "would have been *much higher* than 60–percent." Because the Dickhoffs must prove only that Jocelyn's chances of death from her cancer moved from unlikely to likely and the jury could find that this change was more probably than not the result of Dr. Tollefsrud's negligence, we believe the district court erred by dismissing the medical-malpractice claim as a claim for reduced chance.

## II

The Dickhoffs also argue that the district court erred by dismissing their claim for medical expenses based on the recurrence of Jocelyn's cancer because Dr. Forman's affidavits support their claim for damages. A medical-malpractice plaintiff must produce an expert affidavit that expresses opinions establishing that the defendant deviated from the standard of care and caused injury to the plaintiff. Minn. Stat. § 145.682, subd. 2–3 (2010). And a plaintiff must prove by expert testimony that it is more probable than not that the respondents' negligence caused her injuries. *Leubner,* 493 N.W.2d at 121. Because Dr. Forman's affidavits state that it was Dr. Tollefsrud's failure to timely diagnose and treat Jocelyn's cancer that raised the likelihood of the cancer's recurrence and her need for additional care from unlikely to probable, a jury could also find that it is more probable than not that the recurrence was caused by Dr. Tollefsrud's negligence. The district court therefore erred by granting summary judgment. We are aware of the evidentiary challenges the Dickhoffs will face, as the respondents emphasize. But we are convinced that material fact disputes here require a trial on the merits.

### DECISION

The district court erred by granting summary judgment to the respondents because the Dickhoffs' medical-malpractice claim is not one for reduced chance. The district court also erred by granting summary judgment for medical expenses based on Jocelyn's recurrence of cancer because the Dickhoffs' expert affidavit asserts that Dr. Tollefsrud's negligence elevated Jocelyn's chances of recurrence from unlikely to probable.

**Reversed.**