*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0334**

Kimberly Shierts, Trustee for the Heirs of Jodie Shierts,
Appellant,

vs.

University of Minnesota Physicians, et al.,
Respondents,

Regents of the University of Minnesota, et al.,
Defendants.

**Filed December 29, 2014
Reversed and remanded
Halbrooks, Judge**

Hennepin County District Court
File No. 27-CV-12-19487

Kay Nord Hunt, Lommen Abdo, P.A., Minneapolis, Minnesota (for appellant)

David D. Alsop, Jennifer M. Waterworth, Gislason & Hunter LLP, Minneapolis, Minnesota (for respondents)

Considered and decided by Halbrooks, Presiding Judge; Connolly, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant-trustee challenges the district court's dismissal of this wrongful-death medical-malpractice action arising out of her sister's death from cancer contracted from a

donated organ. Appellant asserts that the district court erred by determining as a matter of law that it was not foreseeable that the decedent would contract cancer from a transplanted organ and thus that respondent-doctor did not breach the standard of care, and that the alleged breach was not the proximate cause of the decedent's death. Because there exist genuine issues of material fact in relation to both the standard of care and causation, we reverse and remand for further proceedings consistent with this opinion.

**FACTS**

Jodie Shierts died of T-cell lymphoma after she received a pancreas from an organ donor who had the disease. Neither the donor's treating doctors nor Shierts's doctor, respondent Ty Dunn, M.D., knew that the donor had cancer before the transplant. This case arises out of appellant Kimberly Shierts's allegations that Dr. Dunn was negligent in accepting the organ for transplantation into Shierts.

Shierts suffered from Type I diabetes. By the end of 2006, she had been diagnosed with end-stage renal disease and required both kidney and pancreas transplants. She received a kidney from her sister on December 5, 2006. On March 6, 2007, having recovered from the kidney transplant, Shierts was placed on the pancreas-transplant waiting list.

On March 30, 2007, Dr. Dunn was notified of a pancreas that would be available for transplantation. Dr. Dunn communicated about the pancreas with Lisa George at Life Source, an organ-procurement organization. George told Dr. Dunn that the donor was a 15-year-old whose cause of death was thought to be bacterial meningitis. Because no causative organism for bacterial meningitis had been discovered by the donor's doctors,

2

Dr. Dunn made further inquiries about the basis for the diagnosis. Based on George's responses to her inquiries, Dr. Dunn understood that a cerebral-spinal-fluid analysis had revealed no bacterial growth but that the lumbar puncture to collect the fluid was done after the institution of antibiotics. Based on this information, Dr. Dunn concluded that the test probably yielded a false negative because the bacteria had already been treated with antibiotics at the time the sample was drawn. Confirming that the donor's meningitis was bacterial was important to Dr. Dunn's consideration of whether to accept the pancreas because she considered the alternative—viral meningitis—to be a relative contraindication for a pancreas transplant. Based on her understanding of the donor's health history, Dr. Dunn made the decision to accept the donor's pancreas and successfully transplanted the donated pancreas into Shierts on March 30, 2007.

The donor of the pancreas transplanted into Shierts died in Long Island, New York, after a month-long illness. In early March 2007, he was admitted to Southampton Hospital and underwent a lumbar puncture that did not produce any bacterial pathogens. Contrary to Dr. Dunn's understanding, this lumbar puncture was done before the institution of antibiotics. Physicians at Southampton diagnosed the donor with viral meningitis. Later that same month, the donor was admitted to Stony Brook University Hospital. During his admission at Stony Brook, the donor underwent an MRI, which revealed meningitis, and another lumbar puncture that contained no bacterial organisms or growth. Physicians at Stony Brook diagnosed the donor with bacterial meningitis. The donor died on March 30, 2007.

On May 3, 2007, an autopsy revealed that the cause of the donor's death was not bacterial or viral meningitis, but T-cell lymphoma, a rare form of cancer. Shierts's doctors were notified of the autopsy results, and on May 9, 2007, Shierts underwent a pancreatectomy to remove the donated organ.[1] The donated pancreas was determined to contain cancer cells. The cancer was also determined to be widespread in Shierts, who underwent chemotherapy following the diagnosis. Shierts died from severe sepsis related to the lymphoma on September 12, 2007.

Following Shierts's death, appellant was appointed as trustee for the heirs and next of kin of Shierts and initiated this wrongful-death medical-malpractice action against Dr. Dunn and respondent University of Minnesota Physicians (together respondents).

In support of her claim, and to satisfy the expert-identification requirements of Minn. Stat. § 145.682 (2012), appellant submitted an affidavit from her counsel identifying Paul W. Nelson, M.D., as her testifying expert. The affidavit states that "Dr. Nelson will testify that the standard of care governing physicians and other health care professionals engaged in organ transplant surgery requires that an organ offered for transplant not be accepted unless and until it has been determined that the organ likely is safe and suitable for transplantation." The affidavit further provides with respect to the standard of care:

> It is required that the medical records relating to the illness
> that led to the death of the organ donor be obtained and
> reviewed by the transplant professional. It is further required
> that the transplant professional confirm, by objective medical

---

[1] Shierts's native pancreas had not been removed and continued to function but did not manufacture insulin, so she "was back to where she started" in terms of organ function.

4

evidence if possible, the true and correct cause of death of the donor.

> If there is any doubt as to the donor's diagnosis or the suitability of the organ, the standard of care does not permit the healthcare professional to accept the organ for transplantation. . . . Further, the organ may not be accepted if it is or should be determined that the donor suffered from a viral illness, including viral meningitis, or a lymphoma.

With respect to respondents' alleged breaches of the standard of care, the affidavit provides:

> [I]t was a breach of the standard of care not to have reviewed the relevant portions of the medical records relating to the illness that led to the death of [the donor], including, but not limited to, the records from Southampton Hospital. Further, it was a breach of the applicable duty not to confirm the cause of death of [the donor], that is, that the cause of death in fact was bacterial meningitis or some other condition that would not preclude the acceptance of the organ for transplantation. It was a breach of the applicable duty to have accepted the organ when [the donor's] objective test results and clinical presentation strongly suggested his cause of death was not the result of bacterial meningitis and, consequently, was unknown.

The affidavit describes in considerable detail the inquiry that Dr. Nelson will testify that respondents were required, but failed, to undertake to determine if the donor's pancreas was suitable for transplantation. The affidavit explains that Dr. Nelson will testify that, had respondents complied with the standard of care in determining whether to accept the pancreas, they would have been "duty bound to reject [the donor's] pancreas for transplantation to [Jodie] Shierts because enough uncertainty surrounding [the donor's] cause of death existed to constitute a foreseeable danger in accepting any of his organs."

5

With respect to causation, the affidavit explains that Dr. Nelson will "opine that the negligence of [respondents] . . . was a direct cause of the death of [Jodie] Shierts due to T-cell lymphoma." The affidavit states that Shierts died as a result of receiving the donor's cancerous pancreas. It further articulates that, if she would not have received the cancerous pancreas, Shierts probably would have survived long enough to receive a healthy pancreas and that a "subsequent transplant would have been successful and enabled [Jodie] Shierts to live out her adulthood." The affidavit describes in detail the bases for Dr. Nelson's opinions in this regard, citing statistics regarding the average wait-times for donated organs and the survival rates for pancreatic transplants, and assessing Shierts's individual circumstances.

Respondents submitted their own expert affidavit and moved for dismissal pursuant to Minn. Stat. § 145.682 or for summary judgment. The district court granted the motion, and this appeal follows.

## DECISION

To prevail on her medical-malpractice claims, appellant must prove (1) "the standard of care recognized by the medical community" in relation to respondents' conduct; (2) that respondents deviated from that standard of care; and (3) that the departure from the standard was the direct cause of Shierts's death. *Dickhoff ex rel. Dickhoff v. Green*, 836 N.W.2d 321, 329 (Minn. 2013), *reh'g denied* (Sept. 9, 2013). Medical-malpractice claims in Minnesota are further governed by Minn. Stat. § 145.682, which requires a medical-malpractice plaintiff to serve on defendants two affidavits, an affidavit of expert review with the complaint and an affidavit of expert identification

(sometimes referred to as an affidavit of expert disclosure), within 180 days of commencement of the action. Minn. Stat. § 145.682, subd. 2.[2]

We review the district court's grant of summary judgment de novo to determine (1) whether there are genuine issues of material fact and (2) whether judgment is appropriate as a matter of law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76 (Minn. 2002). We must "view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). We review a dismissal for failure to comply with Minn. Stat. § 145.682 for an abuse of discretion. *Broehm v. Mayo Clinic Rochester*, 690 N.W.2d 721, 725 (Minn. 2005).

The district court in this case granted dismissal both on summary-judgment grounds and for failure to comply with Minn. Stat. § 145.682. Because the district court relied primarily on a summary-judgment analysis, and because a grant of summary judgment would be dispositive even if the district court erred by granting dismissal for failure to comply with Minn. Stat. § 145.682, we focus first on the summary-judgment decision. We conclude that appellant has raised genuine issues of material fact with respect to each element of her medical-malpractice claim and that the district court thus erred by granting summary judgment.

---

[2] Minn. Stat. § 145.682, subd. 2, was amended in 2014 to require disclosures "within 180 days after commencement of discovery under the Rules of Civil Procedure, rule 26.04(a)." 2014 Minn. Laws ch. 153, § 1, at 110. The amendment was effective April 4, 2014, but applies only to actions commenced on or after that date. *Id.*, § 5, at 111. Because appellant commenced this action in September 2010, the amendment does not apply here.

*Standard of care*

With respect to the standard of care and breach of that standard, appellant's expert, Dr. Nelson, will testify that Dr. Dunn was required to investigate and "confirm, by objective medical evidence if possible, the true and correct cause of death of the donor." Dr. Nelson further will testify that the standard of care would require rejection of an organ if "there is any doubt as to the donor's diagnosis or the suitability of the organ." And Dr. Nelson will specifically testify that an organ should "not be accepted if it is or should be determined that a donor suffered from a viral illness, including viral meningitis, or a lymphoma." Dr. Nelson will testify that Dr. Dunn breached the standard of care by failing to review the donor's medical records and by accepting the organ when "objective test results and clinical presentation strongly suggested his cause of death was not the result of bacterial meningitis and, consequently, was unknown." Both Dr. Dunn and respondents' expert dispute Dr. Nelson's characterization of the standard of care, but that merely creates a genuine issue of material fact that precludes the entry of summary judgment. *See Becker v. Mayo Found.*, 737 N.W.2d 200, 216 (Minn. 2007) (holding that the standard of care in medical-malpractice cases "is a question of fact for the jury").

The district court acknowledged Dr. Nelson's opinion with respect to Dr. Dunn's breach of the standard of care but reasoned that "the [d]onor's diagnosis at the time of the transplant surgery was neither unknown nor uncertain. The final diagnosis was bacterial meningitis although earlier physicians thought it was viral meningitis." To the extent that the district court determined that the donor had bacterial meningitis at the time of his death, the district court engaged in impermissible fact-finding at the summary-judgment

8

stage of proceedings. At the very least, the district court's reasoning misses the import of Dr. Nelson's testimony. Dr. Nelson does not dispute the history of diagnoses of the donor's illness. And it is undisputed that the doctors at Stony Brook diagnosed the donor with bacterial meningitis. But Dr. Nelson opines that Dr. Dunn breached the standard of care by relying on that diagnosis when there were indications in the medical records that it might not be accurate.

The district court also reasoned that Dr. Dunn did not violate the standard of care because it was not foreseeable that the donor had T-cell lymphoma. But Dr. Nelson opines that Dr. Dunn breached the standard of care by accepting the donor's pancreas because it could not be confirmed that the donor had bacterial meningitis, and there was a risk that the donor had viral meningitis or some other illness that would make the pancreas unsuitable for transplantation. Dr. Nelson concludes that "enough uncertainty surrounding [the donor's] cause of death existed to constitute a foreseeable danger in accepting any of his organs." Dr. Nelson's testimony in this regard is sufficient to create jury questions on the first two elements of appellant's medical-malpractice claim—the standard of care and Dr. Dunn's departure therefrom. *See Dickhoff,* 836 N.W.2d at 329 (stating elements of medical-malpractice claim without reference to foreseeability); *see also* 70 C.J.S. *Physicians & Surgeons* § 134 ("A medical malpractice case is a kind of tort action in which the traditional negligence elements are refined to reflect the professional setting of a physician-patient relationship.").

9

*Causation*

In order to prove causation, appellant must prove "that it is more probable than not that his or her injury was a result of [Dr. Dunn's] negligence." *Leubner v. Sterner*, 493 N.W.2d 119, 121 (Minn. 1992). The parties' experts agree that Shierts's death was caused by T-cell lymphoma and that she contracted the T-cell lymphoma from the pancreas transplanted into her. Dr. Nelson further will testify that, had Dr. Dunn rejected the donor's pancreas, Shierts likely would have lived long enough to receive a different pancreas and would have recovered from a subsequent transplant to "live out her adulthood." Respondents' expert disputes Dr. Nelson's opinions in this regard, but again, that is what creates a genuine issue of material fact that precludes the entry of summary judgment. *See Lubbers v. Anderson*, 539 N.W.2d 398, 402 (Minn. 1995) ("Generally, proximate cause is a question of fact for the jury; however, where reasonable minds can arrive at only one conclusion, proximate cause is a question of law.").

The district court reasoned that causation cannot be proven because "the failure to confirm whether the [d]onor's cause of death was viral or bacterial meningitis undisputedly did not cause [Jodie] Shierts' death. The [d]onor in fact had neither and [Jodie] Shierts in turn was not infected with either." This reasoning is inconsistent with Minnesota caselaw on proximate cause.

> [F]or a party's negligence to be the proximate cause of an injury, the act must be one which the party ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others, *though he could not have anticipated the particular injury which did happen*. There must also be a showing that the defendant's conduct was a substantial factor in bringing about the injury.

10

*Id.* at 401 (quotations, citations, and alterations omitted) (emphasis added). Put another way, "negligence is tested by foresight but proximate cause is determined by hindsight." *Dellwo v. Pearson*, 259 Minn. 452, 456, 107 N.W.2d 859, 862 (1961). Here, there can be little dispute that Dr. Dunn's decision to accept the pancreas for transplantation into Shierts was a substantial factor in bringing about Shierts's death. Moreover, as is discussed above, Dr. Nelson's expert testimony is sufficient to support a jury finding that acceptance of the pancreas constituted a departure from the standard of care. The fact that the particular injury was not foreseeable does not preclude a finding of proximate cause:

> If a person had no reasonable ground to anticipate that a particular act would or might result in any injury to anybody, then, of course, the act would not be negligent at all; but, if the act itself is negligent, then the person guilty of it is equally liable for all its natural and proximate consequences, whether he could have foreseen them or not.

*Id.* at 455, 107 N.W.2d at 861 (quotation omitted).

Because appellant has offered evidence sufficient to support findings in her favor on each element of her medical-malpractice claim, the district court erred by granting summary judgment to respondents.

### *Compliance with Minn. Stat. § 145.682*

For the same reasons that it erred in granting summary judgment, the district court abused its discretion by determining that appellant's affidavit of expert identification was insufficient. In order to satisfy the statutory requirements, an affidavit of expert identification must

11

(1) disclose specific details concerning the expert's expected testimony, including the applicable standard of care, (2) identify the acts or omissions that the plaintiff alleges violated the standard of care, and (3) include an outline of the chain of causation between the violation of the standard of care and the plaintiff's damages.

*Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 428 (Minn. 2002).

Respondents attempt to characterize this as a case in which appellant's expert has failed to provide an outline of causation. *See, e.g.*, *id.* at 428-29 (summarizing cases in which the supreme court has determined affidavits insufficient with respect to the chain-of-causation requirement). But this is not a case in which the cause of the injury is disputed. The parties' experts agree—and appellant's affidavit of expert identification sets forth—that Shierts died from T-cell lymphoma that she contracted from the transplanted pancreas. Liability in this case will turn not on causation, but on whether Dr. Dunn violated the standard of care in accepting the donated pancreas for transplantation into Shierts. Respondents do not challenge appellant's affidavit of expert review on the basis that it fails to set forth the standard of care and Dr. Dunn's conduct that is alleged to have breached that standard. Nor, based on our analysis above, could they succeed in such a challenge. Accordingly, we conclude that the district court abused its discretion by granting dismissal for failure to comply with Minn. Stat. § 145.682.

**Reversed and remanded.**